IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

BRUCE FOCHS,

    Plaintiff,                                                                OPINION AND ORDER

    v.                                                                                   14-cv-592-wmc

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

    Defendant.
_____

    Pursuant to 42 U.S.C. § 405(g), plaintiff Bruce Fochs seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Fochs contends that remand is warranted because the Administrative Law Judge erred in rejecting, at least in part, the opinion of two examining physicians. Because the ALJ provided a reasoned explanation for discounting both physicians' opinions, the court will affirm the Commissioner's decision.

FACTS[1]

    At the time he applied for SSI, Fochs was 53 years old. At the time of the evidentiary hearing, he was 56. Fochs has at least a high school education, is able to communicate in English, and has past work experience as a commercial and/or residential cleaner, machine operator and spray painter. Fochs testified at his hearing that he last

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #7.

worked on July 1, 2006, but only for one day, having passed out at work. Fochs claims disability based on uncontrolled diabetes and, specifically, frequent hypoglycemic episodes.

The medical record confirms Fochs' past hypoglycemic episodes have resulted in hospitalization and/or ER visits dating back to 2008, including at least one hypoglycemic episode resulting in a car accident in 2010. During the period from 2008 to 2010, Fochs was also homeless or at least his housing situation was at times uncertain, leaving one medical provider to note that: "At this point, without substantial assistance with medications, test strips, dietary support, and stable living situation, it is doubtful that he will be able to bring his illness under control sufficiently to be able to drive a vehicle or perform heavy labor." (AR 321.)

Even when Fochs' situation was more stable, he failed to follow a treatment-regimen by regularly testing his blood sugar levels (or, at least, bringing the data sheets to doctor's appointments), refrigerating his insulin and controlling his diet. (AR 334, 336, 341.) Following a stint of doctors' appointments during the summer and early fall of 2010 (on or around the time of his car accident), the medical record reveals only two appointments in 2011: a January 2011 visit with his main primary treating physician, Dr. King, in which she noted that Fochs was checking his blood sugars infrequently; and a visit in April 2011, where King notes that Fochs was dropped from Medicaid, is not testing his blood sugar and is smoking marijuana regularly. (AR 325, 331.)

In Fochs' own April 2011 self-report about his daily activities and health condition for purposes of his social security application, he reported 6-8 hypoglycemic

episodes resulting in ambulance trips and being hospitalized 25-30 times. The social worker who apparently assisted Fochs in completing this form, Linda Larson Schlitz, also annotated his form with a note regarding his inability to comply with diabetes management due to (1) a lack of insurance / money, and (2) other issues unrelated to money (e.g., "needs reminders during testing," bad at managing money, etc.). (AR 239-247.) Schlitz also included an addendum dated April 29, 2011, in which she described Fochs' delusions regarding: the DEA watching him; other problems with rational thinking; problems with controlling blood sugars, etc. (AR 238.)

Fochs was evaluated by state agency physicians for purposes of his SSI application during the summer of 2011. Consistent with Dr. King's opinion as Fochs' treating physician, those physicians limited Fochs to heights and hazards. Two psychiatrists, however, found that any psychological conditions were not severe. (AR 372-75, 395, 397.) After his first ALJ hearing, Fochs went through another round of psychiatric testing in March 2013. A disability psychological report by Gregory Cowan, Ph.D., dated March 21, 2013, however, subsequently opined that Fochs' "[p]rognosis is poor, as it appears that personality issues are interfering with his diabetes management in the form of impulsiveness and failure to plan ahead, as well as continued drug use." (AR 455)

Critical for Fochs' challenges here, in his March 22, 2013, report, Dr. Riemer opined that Fochs was not capable of working more than 6 to 7 hours a day due to fatigue. (AR 464.) And after conducting various psychiatric tests of Fochs, Barbara H. Rothweller, Ph.D., concluded in a March 28, 2013, report that "[g]iven patient's

3

combination of physical problems, cognitive impairments, severe depression/anxiety, and behavioral dyscontrol, patient does not appear capable of maintaining gainful employment." (AR 473.)

In his decision concluding that Fochs was not disabled, the ALJ found one severe impairment: diabetes mellitus. (AR 22.) Despite Fochs not alleging a disabling mental health condition, the ALJ also considered whether Fochs suffered from a mental health impairment based on certain medical records indicating a range of possible diagnoses, which might interfere with his ability to manage Fochs' diabetes. The ALJ concluded, however, that "the claimant's medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (AR 22.) In reaching this conclusion, the ALJ walked through the regulation for evaluating mental disorders in great depth. (AR 22-27.) The ALJ nevertheless determined that Fochs had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid hazardous heights and dangerous machinery." (AR 27.)

Based on his history of noncompliance with treatment, the ALJ also largely discounted Fochs' credibility. (AR 28.) In particular, the ALJ rejected Fochs' argument that he was noncompliant because of financial constraints or other issues associated with his frequent homelessness, finding instead that even when Fochs had insurance, he was noncompliant and chose to spend his money on other items (*e.g.*, Mountain Dew and marijuana), instead of necessary diabetic medical supplies (*e.g.*, test strips). (AR 28-29.)

The ALJ also questioned the frequency of Fochs' claimed hypoglycemic episodes, finding that the record did not support the frequency and there were no signs of collateral consequences to his lack of control, such as organ damage, diabetic neuropathy or retinopathy. (AR 29.)

As for his treatment of medical opinions, the ALJ placed weight on the fact that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (AR 31.) ALJ also placed some weight on the conclusions of Dr. Riemer, who performed a consultative examination in March 2013, though the ALJ rejected Dr. Riemer's conclusion that Fochs could not work more than a 6-7 hour day due to fatigue, finding that Riemer heavily relied on Fochs' subjective report of symptoms and limitations, and there are good reasons for questioning his reliability. (AR 31-32.) The ALJ also placed some weight on the state physician's opinion that Fochs not disabled. (AR 32.)

From all of this, the ALJ concluded that Fochs could perform past relevant work as a commercial and/or residential cleaner, machine operator, and spray painter, consistent with the VE's testimony that this work does not require the performance of any work-related activities precluded by his RFC. (AR 32.)

OPINION

Plaintiff asserts two challenges to the ALJ's determination. *First*, he contends that the ALJ erred by failing to credit Dr. Reimer's opinion fully, in particular his opinion that

5

Fochs is not able to work more than six to seven hours a day due to fatigue. The ALJ explained, however, that he discounted Dr. Reimer's finding given that: (1) Reimer erred as a matter of fact in attributing Fochs' noncompliance and related fatigue to his inability to afford medications; and (2) Riemer's finding of fatigue must have been based solely on Fochs' self-reporting, since he only examined him on one occasion. As for the first basis, plaintiff's counsel does not challenge the ALJ's credibility determination that Fochs' noncompliance was *not* tied to an inability to afford medication or other treatment supplies. Accordingly, plaintiff cannot reasonably challenge the ALJ's rejection of Dr. Riemer's decision to credit Fochs' claim that he was unable to pay for medical treatment.

As for the second basis, plaintiff's counsel countered at the October 2015 hearing before this court, that since Dr. Riemer not only reviewed the medical record, but conducted a physical and neurophysical examination, the ALJ erred in attributing Riemer's finding of fatigue to Fochs' self-reporting alone. While Dr. Riemer's review was not limited to Fochs' self-reporting, the medical record available to Riemer only contained the 2010 and 2011 treatment notes described above, in which Fochs' *treating* physician found he was limited only to not driving or performing heavy labor, without any restriction as to the amount of time he was capable of working per day. While Dr. Riemer's opinion as an examining physician is entitled to more weight than that of a non-examining physician, the ALJ was entitled to give greater weight to Fochs' treating physicians who examined him once. Accordingly, the court rejects this challenge.

*Second*, plaintiff challenges the ALJ's rejection of the opinion of an examining psychiatrist, Dr. Rothweiler, who unlike the other physicians who examined Fochs in

6

2011, found severe impairments with respect to his "complex problem solving and mild impairments in divided attention and visual memory." (AR 473.) In reaching this conclusion, Dr. Rothweiler conducted various neuropsychological tests. The ALJ rejected Rothweiler's finding of a cognitive impairment, finding the diagnosis (1) unsupported by the record as a whole, (2) conclusory and (3) not linked to specific work-related limitations. In particular, the ALJ dismissed Rothweiler's opinion because it was based on "incomplete and/or misleading information" since Fochs had self-reported different alcohol and drug use than he had at an earlier ALJ hearing and to other health care providers.

      Here, too, the ALJ's rejection of the examining physician's opinion is tied to his discounting of Fochs' credibility. Absent a challenge to the ALJ's credibility finding, this basis for remand lacks merit since the ALJ tied his rejection of Dr. Rothweiler's opinion to his finding that Fochs had provided misleading and incomplete information to Rothweiler during his examination. *See Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) (requiring the ALJ to build an "accurate and logical bridge from the evidence to his conclusion").[2] As such, the court rejects the second basis offered by Fochs for remand.

---

[2] At the beginning of the hearing, the court opened the door to an argument of whether the ALJ failed to adequately consider Fochs' mental health issues in determining his ability to comply with treatment, by plaintiff's counsel did not pick up this argument, effectively waiving it.

ORDER

IT IS ORDERED that the Commissioner's decision is AFFIRMED and the complaint filed by plaintiff Bruce Fochs is DISMISSED.

Entered this 31st day of March, 2016.

BY THE COURT:

/s/

_____
William M. Conley
District Judge